Raymond GREEN, Irvin Green, Larry Campbell, William Kuehne, Don McClure, Norman McClure, Stuart Petersen, Reuben R. Depner, Mike Harrington, and Wandon Ashby, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 78–2739.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1980.

Decided Oct. 2, 1980.

Patrick B. Cerutti, Spokane, Wash., for plaintiffs–appellants.

Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., for defendant–appellee.

Before BROWNING, SNEED and CANBY, Circuit Judges.

SNEED, Circuit Judge:

Appellants brought suit under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1976) ("FTCA"), for economic losses resulting from the application of DDT to federal grazing lands upon which appellants' cattle were grazing. The district court ruled that appellants' tort claims were barred by the misrepresentation and discretionary function exceptions to the FTCA. 28 U.S.C. § 2680(a) and (h) (1976). We affirm.

## I.

## FACTS

Appellants, who held grazing permits issued by the Bureau of Indian Affairs, pastured cattle during the period in question upon lands belonging to the Colville Indian Reservation located in the State of Washington. Beginning in 1970, an outbreak of the Douglas fir tussock moth caused extensive defoliation of timber in Washington, Oregon, and Idaho. The only pesticide known to be effective against the tussock

moth was DDT, the use of which was restricted by federal law. For several years, various federal and state agencies studied the problem, and alternative pesticides were tried, without success. On February 26, 1974, after several public hearings, the Environmental Protection Agency (EPA) authorized the use of DDT by the Forest Service. The EPA order contained a number of restrictions, one of which provided that "[t]o the extent possible, livestock and other domestic animals shall be removed from the treatment area . . . ."

Various state and federal agencies, including the Forest Service and the Bureau of Indian Affairs, participated in the program in which DDT was used. The Forest Service prepared a letter to be sent to livestock owners notifying them of the program and of its consequences for livestock in the treatment area. On March 5, 1974, the Bureau of Indian Affairs, which was responsible for notifying cattle owners operating on the Colville Indian Reservation, sent its notification letter to those owners. This letter differed from that prepared by the Forest Service in what the district court found to be two significant respects. First, although both letters referred to an earlier study conducted near Burns, Oregon, in which one of five cows tested six months after DDT had been applied to grazing lands had residues in excess of established limits, the Service's letter stated that the program in this case "may result in both higher levels of residue and greater percentages of animals exceeding the tolerance level." The Bureau's letter merely stated that "similar results may be found in our area." Second, although both letters warned that cattle with residue levels in excess of the legal limit could not be sold, the Service's letter advised that livestock owners would bear the substantial costs of testing cattle for residue levels. No such warning appeared in the Bureau's letter.

Appellants continued to graze their cattle on Reservation lands, and in June those lands were sprayed with DDT. As a result, the cattle could not be sold that fall but had to be held over for sale the following year. Appellants allegedly suffered financial injury due to the weight loss of the cattle and the costs of winter maintenance.

Appellants brought suit under the FTCA, alleging negligence, trespass, and noncompliance with the EPA order. Appellants also alleged an unconstitutional taking of property by the United States. However, the parties agreed that the district court lacked jurisdiction over the taking claim and that if appellants did not prevail on their FTCA claims, the taking claim should be transferred to the Court of Claims, pursuant to 28 U.S.C. § 1406(c) (1976). At trial, most of the facts were stipulated. The district court found that the government's decision to use DDT was an act of discretion protected by the discretionary function exception to the FTCA. The court also found that the letter sent to appellants by the Bureau of Indian Affairs contained material misstatements and omissions. The court concluded, however, that the government was not liable because of the misrepresentation exception. The court thus dismissed appellants' tort claims and transferred the taking claim to the Court of Claims. Appellants appeal the dismissal of their FTCA claims.

## II.

### THE MISREPRESENTATION EXCEPTION

Appellants' principal contention is that the government is liable for its failure adequately to warn them of the full consequences of its DDT program. Although the district court found that the Bureau's notice letter contained material misstatements and omissions, it held that liability was precluded by the misrepresentation exception in 28 U.S.C. § 2680(h) (1976). Seeking to avoid this exception, appellants assert that the government's liability rests on its failure to discharge its duty to warn, not on its false statements in the notice letter. Appellants also argue that the misrepresentation exception is applicable only when the government has no duty to provide information to

the persons injured by the misrepresentation.[1]

■ We cannot accept appellants' arguments. Giving false information is a type of failure to give true information. Nothing should turn on the inclusion of the former in the latter nor upon the ease with which imparting false information can be described as a failure to impart true information. Nor does the case law support the appellant. The misrepresentation exception has been held to bar suits based on a failure to give any warning to injured parties. *E. g., City and County of San Francisco v. United States*, 615 F.2d 498, 504–05 (9th Cir. 1980); *Preston v. United States*, 596 F.2d 232 (7th Cir. 1979); *Cargill v. United States*, 426 F.Supp. 127 (D.Minn.1976). Nor does the existence of a duty on the part of the government to provide information to the plaintiffs render the exception inapplicable. In *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), the Supreme Court held that the misrepresentation exception precluded the claim of the buyers of a house who had relied to their detriment on a careless and inaccurate FHA appraisal. In so holding the Court acknowledged that "it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, lest the intended recipient be misled to his financial harm." *Id.* at 710, 81 S.Ct. at 1302. *See also Preston*, 596 F.2d at 237.[2]

■■ In applying the misrepresentation exception, therefore, the question is not whether the government is guilty of an affirmative misstatement or merely of an omission. Nor is the existence of a specific duty to warn the decisive factor. We think, rather, that the applicability of the exception depends upon the commercial setting within which the economic loss arose. In *Preston*, 596 F.2d at 239, the court declared that "[t]he test is not whether the injury was economic but whether it resulted from a commercial decision based on a government misrepresentation." Similarly, in *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (en banc), this court stated: "The misrepresentation exclusion presumably protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official." *See also Neustadt*, 366 U.S. at 711 n.26, 81 S.Ct. at 1302 n.26. We hold, therefore, that the misrepresentation exception precludes liability where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation by government consisting either of false state-

---

1. Appellants also contend that the misrepresentation defense should not have been considered because it was not pleaded as an affirmative defense. The district court ruled that the misrepresentation exception is jurisdictional and need not be pleaded as an affirmative defense. This ruling made it unnecessary for the government to amend its pleadings, as it could have done under Fed.R.Civ.P. 15(b). The district court's view that the misrepresentation exception is jurisdictional is contrary to the statement of this court in *Builders Corporation of America v. United States*, 259 F.2d 766, 771 (9th Cir. 1958). *But see United States v. Taylor*, 236 F.2d 649, 652 (6th Cir. 1956). However, since appellants were given notice of the misrepresentation defense by the government's trial brief, their objection is overridden by the principle that "at the trial stage the case is to be heard on the merits, and is not to be hamstrung by faulty pleadings, unless actual, not conjectural, prejudice results from the faulty pleadings." 2A Moore's Federal Practice ‡ 8.05 at 8–34 (2d ed. 1979). *See also Dunn v. Trans World Airlines, Inc.* 589 F.2d 408, 412–13 (9th Cir. 1978).

2. Appellants rely upon this court's recent decision in *City and County of San Francisco v. United States*, 615 F.2d 498 (9th Cir. 1980). In that case, holding that a claim based on an alleged negligent failure to inform was barred by the misrepresentation exception, the court distinguished cases cited by the complaining party with the observation that "[i]n both cases the government had specifically assumed an obligation to furnish *crucial information in the performance of a routine operational function* –supplying traffic and weather data for use of aircraft in flight." *Id.* at 505 (emphasis added). As the court's statement indicates, however, it was not merely the government's assumption of a duty to inform which the court found significant in those cases, but also the kind of information which the government had undertaken to provide. Thus, the statement does not support appellants' contention that the misrepresentation exception is inapplicable whenever the government fails to discharge a specific duty to warn.

ments or a failure to provide information which it had a duty to provide.

Though we recognize that the decisions in this area may not be fully reconcilable, our view of the misrepresentation exception is consistent with case law construing the provision. Where the plaintiffs' injuries were not commercial, as, for instance, in the airplane crash cases, *e. g., Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967); *United Air Lines, Inc. v. Wiener*, 335 F.2d 379 (9th Cir.), *cert. dismissed*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), and the medical services cases, *e. g., Ramirez, supra*; *Betesh v. United States*, 400 F.Supp. 238 (D.D.C. 1974), courts have generally ruled that the exception does not preclude claims based on the government's failure to inform. *See also Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). On the other hand, the exception has usually been held to bar claims for damages resulting from commercial decisions based on false or inadequate information. *E. g., Neustadt, supra*; *Preston, supra*; *Cargill, supra*; *Scanwell Laboratories v. Thomas*, 521 F.2d 941, 947–48 (D.C. Cir. 1975).

█ In this case, appellants assert that the misstatements and omissions in the notice letter prevented them from making an informed decision as to whether to continue to graze their cattle on reservation lands. As a result, appellants suffered economic loss. As we see it, this is the kind of injury to which the exception applies. *Cf. Saxton v. United States*, 456 F.2d 1105 (8th Cir. 1972) (exception precludes claim based on plaintiffs' failure to treat cattle in reliance on government tests indicating cattle were not diseased). The district court was correct in holding that the government is not liable for the inadequate notice letter sent to appellants.

## III.

## OTHER ISSUES

█ As alternative grounds of liability, appellants suggest that the DDT program amounted to a trespass upon their property rights and that the government violated the restriction in the EPA order requiring removal of livestock from the treatment area. Appellants assert that the district court failed to rule on these claims. From our reading of the record, however, we conclude the district court held that these claims were barred by the discretionary function exception. This exception provides that the FTCA does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency . . ., whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1976).

Although the discretionary function exception does not cover all government actions involving the exercise of judgment, this court has stated that the exception applies to judgments made at the planning rather than the operational level, *Driscoll v. United States*, 525 F.2d 136, 138 (9th Cir. 1975), and to decisions involving policy judgments. *Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir. 1979); *Martin v. United States*, 546 F.2d 1355, 1360 (9th Cir. 1976). There is no doubt that the decision to apply DDT was made at the planning level. Various agencies and departments studied the problem and made recommendations, and the EPA authorized the use of DDT only after considering these recommendations and holding several public hearings. The decision, which required weighing the harmful consequences of the pesticide against the damage being inflicted by the tussock moths, involved a policy judgment. *Cf. Harris v. United States*, 205 F.2d 765 (10th Cir. 1953) (discretionary function exception applicable to government decision to spray federal lands with 2, 4–D, which caused injuries to crops on adjoining lands).

The government's compliance with the EPA order involved a similar exercise of judgment. The order required the removal of livestock only "[t]o the extent possible," and it did not indicate how the removal was to be accomplished or who was to bear the expenses of removing and relocating the livestock. Both the Forest Service and the Bureau of Indian Affairs were left with

considerable discretion as to how the order should be carried out. In the exercise of that discretion, it was decided that notice letters should be sent to livestock owners, thus allowing the owners to determine the extent to which removal of livestock was feasible and desirable. The parties have stipulated that the decision to send notice letters was made "during the preparation stage" of the program and for the specific purpose of complying with the removal restriction.

We hold, therefore, that the government's decisions to apply DDT and to comply with the removal restriction by sending notice letters to livestock owners were protected by the discretionary function exception. Appellants' claims alleging trespass and noncompliance with the EPA order are therefore barred.[3]

Affirmed.

---

**3.** Even if the discretionary function exception were inapplicable, dismissal of appellants' trespass claim would have been proper. The grazing permits which appellants held gave them no "right, title, interest, or estate in or to the lands." 43 U.S.C. § 315b (1976). Under California law, the holder of such a permit has a mere license which does not include a right to exclude the owner of the property. *Nahas v. Local 905, Retail Clerks Int'l Ass'n*, 144 Cal. App.2d 808, 820–21, 301 P.2d 932 (1956). We doubt, therefore, that appellants could maintain a trespass action against the owner under California law. We have been unable to find any Washington case in point. Since the FTCA makes the government liable only "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674 (1976), the government would not be liable under a theory which does not state a claim under state law similar to that of California.