Irene H. **ALLEN, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. C 79–0515.**

United States District Court, D. Utah, C. D.

Aug. 21, 1981.

Dale Haralson, Haralson, Kinerk & Morey, Tucson, Ariz., Stewart L. Udall, Phoenix, Ariz., Wayne Owens, Parsons, Behle & Latimer, Salt Lake City, Utah, J. MacArthur Wright, Atkin & Wright, St. George, Utah, Duncan, Weinberg, Palmer & Miller, Washington, D. C., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Bruce E. Titus, Asst. Director, Pamela A. Hornett, Deborah C. Ratner, William R. Herman, Trial Attys., U. S. Dept. of Justice, Civ. Div., Henry A. Gill, Jr., Deputy Asst. Gen. Counsel for General Litigation, U. S. Dept. of Energy, Washington, D. C., Ralph B. Johnson, Asst. U. S. Atty., Salt Lake City, Utah, for defendant.

## MEMORANDUM OPINION and ORDER

### JENKINS, District Judge.

The above-entitled action was brought by nearly 1,000 persons against the United States government for injuries alleged to have been individually sustained as a result of the government's program of open-air testing of nuclear weapons at its Nevada Test Site conducted from 1951 through 1962. The plaintiffs, residents of Utah, Nevada and Arizona, assert broad allegations of negligence on the part of federal agencies and personnel in the conduct of the testing program, including breach by the government of an alleged continuing duty to conduct the tests in a manner that was reasonably safe to life and property, to warn persons in affected communities, in-

cluding the plaintiffs, of the risks and potential consequences of exposure to radioactive fallout generated by the tests, and to take adequate precautions to minimize or eliminate exposure of civilians to harmful fallout radiation. This action was filed in this Court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*

On April 27, 1981, the defendant filed two motions to dismiss the complaint for want of subject-matter jurisdiction. See Rule 12(b)(1), Federal Rules of Civil Procedure. The first motion asserts that this Court lacks jurisdiction of the plaintiffs' claims on the ground that they all allege injuries resulting from governmental conduct that comes within the scope of 28 U.S.C. § 2680(a), the discretionary function exception to the Federal Tort Claims Act.[1] The second motion asserts that the plaintiffs' claims "accrued" more than two years before any action was taken pursuant to the Federal Tort Claims Act and are therefore barred by the applicable statute of limitations, 28 U.S.C. § 2401(b).[2]

The parties filed extensive memoranda, including voluminous attachments and exhibits.[3] On June 4, 1981, the motions to dismiss came on for hearing before this Court. This Court, having heard and considered the arguments of learned counsel on both sides, having reviewed the documentation and memoranda submitted by the parties, and having given attention to the ap-

---

1. 28 U.S.C. § 2680(a) provides:

 The *provisions of this chapter* and section 1346(b) of this title *shall not apply to*—

 (a) *Any claim* based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance or the failure to exercise or perform a discretionary function* or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. (Emphasis added).

2. 28 U.S.C. § 2401(b) provides:

 (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency

within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

3. The memoranda and attachments submitted to this Court amount to a 12-inch pile of documents, not including more than 3,900 pages of congressional committee hearings reproduced in three volumes. A number of the documents so submitted are honey-combed by blank spaces stamped "deleted". The exhibits also include a videotape presentation of a government documentary on nuclear testing. The text of the film's narration was transcribed and included in the transcript of the hearing on the motions.

plicable legal authorities, now rules on the defendant's motions to dismiss as follows:

## I. THE DISCRETIONARY FUNCTION EXCEPTION

The discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), has been the subject of extensive litigation and of professional and scholarly comment. See e. g., Reynolds, "The Discretionary Function Exception of the Federal Tort Claims Act," 57 *Georgetown Law Journal* 81 (1968); Annot., 37 A.L.R. Fed. 537 (1978); Annot., 36 A.L.R. Fed. 240 (1978); Annot., 35 A.L.R. Fed. 481 (1977); Annot., 99 A.L.R.2d 1016 (1965). Of the exceptions to the Government's waiver of sovereign immunity under the Federal Tort Claims Act, the discretionary function exception has by far the greatest potential for repeated and varied application. The other exceptions bar litigation by certain classes of plaintiffs or the adjudication of specific categories of claims. The discretionary function exception compels an examination of the intrinsic nature of the Government's conduct, no matter who the plaintiff is or what interest the plaintiff asserts has been injured by that conduct.

Read broadly, the discretionary function exception may easily swallow the rule; the stopping of a government truck at a highway stop sign involves choice, judgment, assessment of risks—*discretion* in the broadest sense.[3A] Clearly the courts must sort the intrinsically discretionary from the truly operational if the Federal Tort Claims Act is to have any meaningful application at all.

The initial outline of the reach of the exception was traced by the United States Supreme Court in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), involving claims arising from the cataclysmic explosion of shiploads of government fertilizer at Texas City, Texas. In *Dalehite,* the Supreme Court held the plaintiffs' claims against the United States for negligent planning and handling of the fertilizer shipment to be encompassed within the discretionary function exception. Justice Reed couched this finding in broad terms:

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. *Where there is room for policy judgment and decision there is discretion.*

*Id.,* 346 U.S. at 35–36, 73 S.Ct. at 967–68 (emphasis added).

Since *Dalehite* the federal courts have struggled repeatedly to formulate a principled analysis of governmental conduct that will effectively guide the application of the discretionary function exception, see, e. g., *Blessing v. United States,* 447 F.Supp. 1160 (E.D.Pa.1978), and cases cited therein; *Jackson v. Kelly,* 557 F.2d 735, 737 (10th Cir. 1977), while remaining consistent with the broad language of *Dalehite.* See *Barton v. United States,* 609 F.2d 977, 979 (10th Cir. 1979) ("The basic authority is *Dalehite v. United States,* . . . "). No "precise litmus paper test," *Payton v. United States,* 636 F.2d 132, 143 (5th Cir. 1981), has yet emerged. See, e. g., *Baird v. United States,* 653 F.2d 437, 441–42 (10th Cir. 1981).

Instead, the courts have looked to the policies underlying the discretionary function exception and have balanced those against the policies served by the Federal Tort Claims Act. As the United States Court of Appeals for the Fifth Circuit pointed out in *Payton v. United States,* 636 F.2d 132 (5th Cir. 1981), "The crux of the concept embodied in the discretionary function exception is that of separation of pow-

**3A.** But see *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953) ("[W]e know that the draftsmen did not intend it to relieve the Government from liability for such common law torts as an automobile collision caused by the negligence of an employee . . . of the administering agency.")

ers." *Id.* at 143 (footnote omitted). Judge Becker in *Blessing v. United States,* 447 F.Supp. 1160, 1170 (E.D.Pa.1978) skillfully elaborates on this notion:

Read as a whole and with an eye to discerning a policy behind this provision, it seems to us only to articulate a policy of preventing tort actions from becoming a vehicle for judicial interference with decisionmaking that is properly exercised by other branches of the government and of protecting "the Government from liability that would seriously handicap efficient government operations," *United States v. Muniz,* 374 U.S. 150, 163 [83 S.Ct. 1850, 1858, 10 L.Ed.2d 805] . . . Statutes, regulations, and discretionary functions, the subject matter of § 2680(a), are, as a rule, manifestations of *policy judgments made by the political branches.* In our tripartite governmental structure, the courts generally have no substantive part to play in such decisions. Rather the judiciary confines itself . . . to adjudication of facts based upon discernible objective standards of law. In the context of tort actions, . . . these objective standards are notably lacking when the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency. *Tort law simply furnishes an inadequate crucible for testing the merits of social, political, or economic decisions.*

*Id.,* 447 F.Supp. at 1170 (footnotes omitted and emphasis added).[4]

This concern for the non-justiciability of questions of political, social or economic policy, a concern long-recognized under traditional separation of powers principles, finds some reflection in the legislative history of the discretionary function exception, see *e.g., Hearings on H.R. 5373 and 6463,* House Committee on the Judiciary, 77th Cong., 2d Sess., at 29 (1942) (Statement of Francis M. Shea), and in the Supreme Court's initial construction of the exception in *Dalehite v. United States, supra,* 346 U.S. at 34, 73 S.Ct. at 967 ("The 'discretion' protected by the section . . . is the discretion of the executive or administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law." [footnote omitted]). In *Dalehite,* Justice Reed attempted to define the limits of protected discretion through reference to the "planning" level as opposed to the "operational" level of government activity; conduct at the planning level is discretionary and therefore immune, conduct at the operational level is not. *Dalehite,* however, gives little transferable guidance in determining where "planning" stops and "operations" begin. Some light was shed upon the subject by the Supreme Court in its subsequent decision in *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), involving alleged negligence by the Coast Guard in the operation of a coastal lighthouse. In *Indian Towing,* Justice Frankfurter's opinion for the majority distinguished *Dalehite* and held the Government liable for its alleged negligence:

The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

\* \* \* \* \* \*

The differences between this case and *Dalehite* need not be labored. The governing factors in *Dalehite* sufficiently emerge from the opinion in that case.

*Id.,* 350 U.S. at 69, 76 S.Ct. at 126 (footnote omitted).

---

**4.** But see L. Green, "Tort Law Public Law in Disguise," 38 *Texas L.Rev.* 1 (1959).

Certainly the details of lighthouse operation involved questions requiring levels of choice, judgment—discretion in the broad sense.

In *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) again the Supreme Court considered Government liability for actions involving some degree of independent judgment and held the Government to be liable without even discussing the discretionary function exception. In *Rayonier*, the plaintiffs were damaged as a result of a fire that raged out of control because of the alleged negligence in the firefighting strategy and tactics of federal officials. The allegations included allegations of negligence in the "planning" stages of the federal fire control effort. Rejecting language from *Dalehite* that found no private cause of action for governmental negligence in firefighting, the Court construed the Federal Tort Claims Act's waiver of sovereign immunity to encompass the plaintiff's claims. The decisions of the federal officials in *Rayonier* seem at face value no less discretionary than some of those immunized in *Dalehite*: exercising judgment in withdrawing firemen from a location seems no more "ministerial" or "operational" than exercising judgment in deciding to fill paper bags with ammonium nitrate fertilizer at a given temperature and humidity.

Some lower federal courts, while treating the *Dalehite* case as the leading opinion on the scope of 28 U.S.C. § 2680(a), have cautiously observed the apparent narrowing of *Dalehite* by *Indian Towing* and *Rayonier*. See *Relf v. United States*, 433 F.Supp. 423, 427 (D.D.C.1977). The "planning/operational" distinction offered by Justice Reed in *Dalehite* has grown increasingly ineffective in harmonizing the results of subsequent cases. See *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); compare, *e.g., Ashley v. United States*, 215 F.Supp. 39, 45–46 (D.Neb.1963) (field decision on how to handle a troublesome bear in a National Park held "discretionary"), *affirmed*, 326 F.2d 499 (8th Cir.

1964), with *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975) (FBI agent's decision on how to handle an airplane hijacking not "discretionary").

In *Smith v. United States*, 375 F.2d 243 (5th Cir. 1967), the Fifth Circuit discarded the "planning/operational" distinction in favor of an approach looking to the policies underpinning the discretionary function exception and to the nature of the discretion involved in each case:

If the Tort Claims Act is to have the corpuscular vitality to cover anything more than automobile accidents in which government officials were driving, the federal courts must reject an absolutist interpretation of *Dalehite*, and that interpretation is rejected by *Indian Towing* and especially by *Rayonier*.... Cases under the Act therefore put courts to the question of what sorts of decisions can be classified as resulting from *discretion within the meaning of § 2680(a)*. It is not a sufficient defense for the government merely to point out that some decisionmaking power was exercised by the official whose act was questioned. Answering these questions, a difficult process, is not aided by importation of the planning stage—operational stage standard as argued for... Such a distinction is specious. It may be a makeweight in easy cases where of course it is not needed, but in difficult cases it proves to be another example of a distinction "so fine-spun and capricious as to be almost incapable of being held in mind for adequate formulation." Mr. Justice Frankfurter for the Court in *Indian Towing, supra*, 350 U.S. at 68 [76 S.Ct. at 126]... Such non-statutory "aids" to construction tend to obscure, to limit, or even to replace the standards whose meaning they are supposed to clarify.... It must be remembered that *the question at hand here is the nature and quality of the discretion involved in the acts complained of.*

*Id.*, 375 F.2d at 246 (emphasis added, footnote and citations omitted). In *Smith*, the plaintiff sought damages for the failure of the Government to prosecute persons al-

legedly injuring his business through boycotts and picketing. Recalling that court's earlier conclusion in *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) that "as an incident of the constitutional separation of powers, . . . the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions," Judge Goldberg held 28 U.S.C. § 2680(a) to apply:

We therefore hold that § 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether these decisions are made during the investigation or prosecution of offenses. See *United States v. Faneca*, 5 Cir. 1964, 332 F.2d 872. Another holding could diffuse the government's control over policies committed to it by the Constitution, and irrationally concentrate political responsibility in fortuitous lawsuits.

Whatever else § 2680(a) may do, its discretionary function exception prevents this diffusion of governmental power into private hands. The United States is immune from liability in the present case not because of the mere fact that government officials made choices, but because *the choices made affected the political* (not merely the monetary) *interests of the nation*. The Act is intended to spread monetary losses in certain cases among the taxpayers; *it is not intended to affect the distribution of political responsibility*.

*Id.*, 375 F.2d at 248 (emphasis added).

In *Smith*, Judge Goldberg outlines the construction of § 2680(a) in light of its fundamental purpose, preservation of the traditional constitutional separation of powers.[5] This form of analysis of the discretionary function exception has been propounded in useful detail by another Fifth Circuit panel in *Payton v. United States*, 636 F.2d 132 (5th Cir. 1981). The *Payton* analysis seeks a pragmatic balancing of private and governmental interests "without the conclusory application of labels." *Id.*, 636 F.2d 143–144.

Considering initially the injured party, the court should review the nature of the loss imposed by the governmental injury. The more serious, in terms of physical or mental impairment, and isolated the loss the closer the question becomes as to whether the individual can be expected to absorb the loss as incident to an acceptable social or political risk of governmental activities. Other factors to be weighed are the expectation of the public or the injured party and the nature of the reliance, whether based upon a consistent level of governmental activity or upon the party's lack of foresight. However deep analysis of these considerations would be more significant in the negligence phase of the court's determinations. A further point of consideration might be the existence of alternative remedies or compensations for the injured party, since the dearth of such alternatives was a primary reason for the enactment of the [Federal Tort Claims Act].

*Id.*, 636 F.2d at 144 (footnotes omitted). The interests of the injured party are of particular concern, according to *Payton*, because "the spread of monetary losses among the taxpayers is the principle concern" of the Federal Tort Claims Act. *Id. Payton* approaches the countervailing interests of the Government as follows:

Looking to the government's interest, the trial court would need to assess the nature and quality of the governmental activity causing the injury. *Smith v. United States*, 375 F.2d 243, 246 (5th Cir. 1967). This could be done by examining the agency's guidelines, or procedures in the area, see, *e.g., Griffin v. United States*, 500 F.2d 1059, 1064–68 (3d Cir. 1974), and determining the administrative level at which the injurious activity took place. See, *e.g., Hendry v. United States*, 418 F.2d 774, 783 (2d Cir. 1969). Along these lines, the court must determine if

---

5. See Note, "Separation of Powers and the Discretionary Function Exception: Political Question in Tort Litigation Against the Government," 56 *Iowa L.Rev.* 930, 946 (1971).

the allegations attack the rules formulated by the agency or merely their application. *Dalehite v. United States*, 346 U.S. at 27, 35 [73 S.Ct. at 963, 967]...; *Hendry v. United States*, 418 F.2d at 782. *Id.* Drawing an analogy to *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). *Payton* additionally inquires "whether the activity is one traditionally or constitutionally exercised by a coordinate branch of government or one fraught with political or policy overtones such as the feasibility or practicality of a program, *Dalehite v. United States*, 346 U.S. at 34, 73 S.Ct. at 967, ..., or prosecutorial discretion, *Smith v. United States*, 375 F.2d at 248, and whether this injurious activity is in an area of potential government embarrassment such as foreign affairs." *Id.*, at 144–145 (footnote omitted). Further, *Payton* urges "a careful assessment of the actual burden, in both the long and short run, on governmental activities and the alternatives available ..." *Id.*, at 145 (footnote omitted).

Finally, *Payton* looks to the amenability of the subject-matter of the suit to the judicial process:

> The Court should consider, whether the vehicle of a tort suit provides the relevant standard of care, be it professional or reasonableness, for the evaluation of the governmental decision. *Hendry v. United States*, 418 F.2d at 783. Similarly, the Court should determine whether the factors for decision are primarily of such political, social or economic nature as to be beyond the Court's experience gained even in civil rights and antitrust litigation.... On this point complexity alone is not dispositive, but rather the Court should assess the nature of the complications and their amenability to the judicial process of evidential offering, evaluation and determination. See *Griffin v. United States*, 500 F.2d at 1064.

*Id.*, at 145 (citation omitted).

In *Payton*, the plaintiffs alleged that the United States Board of Parole and the Bureau of Prisons negligently released on parole a dangerous convict who subsequently committed additional murders against the plaintiffs' decedents, resulting in the claim for damages for wrongful death. While the decision to release the prisoner in question certainly involved the exercise of discretion in the classic sense, the Court, led by Judge Fay, denied immunity under § 2680(a). While the Court would extend the discretionary function exception to insulate the Parole Board's formulation of its basic policies and parole guidelines, it extended immunity no farther:

> The choices involved in applying the guidelines and releasing a particular person are of another sort. Whether characterized as "operational", "day-to-day" or by some other label, *they do not achieve the status of a basic policy evaluation and decision.* Such decisions, if negligent, are not protected by section 2680(a).

*Id.*, at 147.

The Fifth Circuit's limitation of the discretionary function exception to the protection of basic social, political and economic policy decisions under traditional separation of powers principles has found reflection in the analysis applied by other courts.

The United States Court of Appeals for the Third Circuit in *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974), in determining the Government's liability for an administrative decision releasing a batch of live polio virus vaccine which turned out to be hazardous and resulted in injury to the plaintiffs, looked to the public policy content of the decision complained of. Rejecting the Government's broad assertion of discretionary function immunity, Judge Rosenn explained the Court's analysis of the issue, commencing with *Dalehite*:

> The decisions held discretionary in *Dalehite* involved, at minimum, some consideration as to the feasibility or practicability of Government programs.... Such decisions involved considerations of public policy, calling for a balance of such factors as cost of Government programs against potential benefit.... Where decisions have not involved policy judgments as to the public interest, the courts have not held the decisions to be immune

from judicial review.... To determine the applicability of the discretionary function exception, therefore, *we must analyze not merely whether judgment was exercised but also whether the nature of the judgment called for policy considerations.*

*Id.,* 500 F.2d at 1064 (emphasis added and citations omitted). Under *Griffin,* an administrative decision, though couched in the complex considerations of scientific, professional or highly technical judgment, is not "discretionary" within the meaning of 28 U.S.C. § 2680(a) unless it additionally embodies political, social· or economic policy judgments traditionally insulated from judicial scrutiny by the separation of powers doctrine.

> Judicial intervention in such decisionmaking through the vehicle of private tort suits would involve the courts in political, economic, and social decisions in apparent violation of the , separation of powers principle that we perceive the discretionary function exception statutorily to embody. Further, precisely because these decisions would require consideration of factors that are primarily political, social, and economic in nature, they, unlike the professional evaluative judgments challenged in *Griffin,* would not be the type of determinations that the courts are "fully capable of scrutinizing ... by the usual standards applied to cases of professional negligence." 500 F.2d at 1066–67....

*Blessing v. United States,* 447 F.Supp. 1160, 1180–1183 (E.D.Pa.1978) (footnotes omitted).

Most important to the litigation now proceeding before this Court is the fact that the United States Court of Appeals for the Tenth Circuit has expressly approved of the analytical approach applied in *Griffin* and similar cases. *First National Bank in Albuquerque v. United States,* 552 F.2d 370, 375 (10th Cir. 1977). In *Jackson v. Kelley,* 557 F.2d 735 (10th Cir. 1977), the Court through Chief Judge Lewis wrote:

> Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required.... The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment....

*Id.,* 557 F.2d at 737–738 (citations omitted). The Court of Appeals in *Wright v. United States,* 568 F.2d 153 (10th Cir. 1977) reaffirmed the "policy" approach to § 2680(a), commenting that "The 'discretionary function' exemption to tort liability is auxiliary to the· government's ability to formulate and implement policy." *Id.,* 568 F.2d at 158. See also *Smith v. United States,* 546 F.2d 872 (10th Cir. 1976).[6] Most recently, the Tenth Circuit Court of Appeals held the Government to be immune from liability for damages resulting from an alleged lack of important detail in an aeronautical chart produced in compliance with federal regulations, which plaintiffs claimed resulted in the crash of their aircraft. The Court found the promulgation of the governing regulations to be sufficiently imbued with public policy concerns to be "discretionary" within the meaning of 28 U.S.C. § 2680(a).[7]

---

**6.** An apparent exception to the "policy" approach is the standard applied by the Tenth Circuit in *Barton v. United States,* 609 F.2d 977 (10th Cir. 1979). In *Barton,* Judge Pickett states the governing standard as follows:

> Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act. Conversely, if there is a standard by which his

action is measured, it is not within the exception.

*Id.,* 609 F.2d at 979. The regulation of grazing upon the public lands at issue in *Barton* required the officers involved to make judgments based upon both technical and public policy considerations. In this way *Barton* is in fact consistent with *Griffin, et al.,* at least in its outcome.

**7.** Other courts as well look to the policy content of a challenged governmental decision or action in determining its "discretionary" nature. In *Relf v. United States,* 433 F.Supp. 423

Considered in light of the relevant case law as this Court has synthesized it to this point, the Government's motion to dismiss the complaint in the case now before it can be granted only if this Court is willing upon the present state of the record to determine that the Government's conduct in its entirety in carrying on the open-air nuclear testing at the Nevada Test Site was so fundamentally imbued with considerations of public policy as to be immunized from judicial scrutiny under the principles of separation of powers as embodied in the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). The Government asks this Court to conclude at this point that the plaintiffs cannot prove any set of facts that would demonstrate wrongful or negligent conduct by any government employee involved in the testing program for which the United States would be liable, at least within the four corners of the plaintiffs' complaint.

Certainly a number of the decisions and judgments that went into the conduct of the atomic tests represented the exercise of discretion at the highest levels of government. It is fundamental that for those decisions, the United States is immune from tort liability.

But, one must understand that the words "discretionary function" as used in the Tort Claims Act, are really the correlative, the other side of the coin, of the exercise of executive power. The discretionary function exception merely reaffirms that courts should not interfere with executive decision making at the highest levels. Whether or not testing should be performed at all is

obviously insulated from judicial interference. But, one must also recognize that discretion functioning at a presidential level, at a cabinet level or at an Atomic Energy Commission level is *not* the same thing at all as the exercise of judgment at a regional level, or at a site level, by a G.S. 16 manager, a scientist, an engineer, a public affairs or information officer, and auxiliary personnel.

While the word "discretion" may be spelled the same and sound the same, looking beyond the word, the function performed at each level of activity is a discretely different function.

Our job, of course, is to look beyond the words to the context in which a particular person may have been hurt and to determine if in that context the cost of that hurt to that person should be bourne alone by that person or shared by all for whose benefit the hurt may have been inflicted. Proceeding down the descending ladder of abstraction, from the general policy formulated on the highest level to the concrete implementation of that policy, one must understand that the case here is not footed on the fact that high level policy decisions were made—but is footed on the alleged, inappropriate manner in which such policy decisions were carried out. The distinction cries out.

As a conceptual device one may visualize the process as an inverted pyramid. the broad policy decision is at the top. As one descends, a multitude of judgments are made and functions and procedures performed in implementing the policy decision.

(D.D.C. 1977), for example, Judge Gasch of the District Court for the District of Columbia comments:

> As has been stated by the Supreme Court in *Dalehite v. United States*, the discretionary function exception is properly construed to include "determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Id.* . . . Although this construction has been narrowed somewhat by later cases, the exception unquestionably applies to decisions which of necessity involve the conscious balancing of policy

considerations. *J. H. Rutter Rex Manufacturing Co. v. United States*, 515 F.2d 97, 99 (5th Cir. 1975); *see Griffin v. United States*, 500 F.2d 1059, 1064 (3rd Cir. 1974). *See also Moyer v. Martin Marietta Corp.*, 481 F.2d 585, 597–98 (5th Cir. 1973). This would seem to be most particularly so with respect to those high-echelon decisions which by their very nature require the careful consideration of sensitive political and public policy factors.

*Id.*, 433 F.Supp. at 427 (citations and footnote omitted). See also *Green v. United States*, 629 F.2d 581, 585 (9th Cir. 1980).

Each such decision is quite obviously not the policy decision. Each is made at a different functional level and each is made in a different context and at a different time.

In short, when we speak of discretion we must focus on the specific level in the descending pyramid of decision making to see if, at that point, in that distinctive context of time and place and people, government actions are of such a nature that persons who are hurt through government actions at that level should in good conscience be made whole.

To re-iterate, discretion at one level may well be insulated and indeed should be. Judgment and related activity at a differing level may not be insulated and indeed should not be.

 This Court cannot dismiss these cases wholesale at this stage of this proceeding upon the basis that each action up and down the ladder of governmental activity in conducting the testing program over a period of years was "discretionary", and thus insulated the government from answering in damages for alleged misconduct in carrying out the testing program. At this point we don't know enough. In a case of this magnitude fundamental fairness compels that any decision made be based on all available information. Thus, this Court now denies the Government's motion to dismiss based upon the discretionary function exception, 28 U.S.C. § 2680(a), without prejudice to its later reassertion upon a more complete record.

The United States urges that there be held what in effect would be a "mini-trial" upon the facts relevant to the dismissal motions. The justification for such a preliminary determination of the discretionary function issue is the fact that 28 U.S.C. § 2680(a)'s bar to tort suits is jurisdictional in nature. See *Baird v. United States*, 653

F.2d, 437, 440, (10th Cir. 1981); *First National Bank in Albuquerque v. United States, supra*, 552 F.2d at 374. Because it is a jurisdictional issue, the Government properly expects that it will be *determined* first, in advance of any determination of the plaintiff's substantive claims. See *Smith v. United States*, 546 F.2d 872, 875–76 (10th Cir. 1976). This does not necessarily mean, however, that it be *heard* and *considered* wholly apart from and prior to a plenary hearing on the merits. As Judge Becker points out in *Blessing v. United States, supra*, "In the ordinary case, a jurisdictional issue is usually determinable on the face of the pleadings or with a minimum of discovery." 447 F.Supp. at 1186.[8] Of course, this proceeding is far from the ordinary case.

Analytically, and as a practical matter, the discretionary function exception operates more as an affirmative defense than as a bar to jurisdiction. *Blessing v. United States, supra.* In a tort action, as the late Professor E. Wayne Thode instructs us,

Whatever the kind of tort, and whatever the type of analysis, there are four basic issues that in some manner must be decided in plaintiff's favor in order for the plaintiff to obtain judgment. They are: (1) Is there a factual connection between plaintiff's injury and defendant? (2) Does the legal system's protection extend to the interest that plaintiff seeks to vindicate; and if some protection is afforded what standards of care does the legal system impose on the defendant? (3) Was that standard of care breached by the defendant? (4) What are the damages?

Thode, "Tort Analysis: Duty-Risk v. Proximate Cause and the Rational Allocation of Functions Between Judge and Jury," 1977 *Utah Law Review* 1 (1977). The discretion-

---

8. The "jurisdictional facts" relevant to an action filed, for example, under 28 U.S.C. § 1332, the "diversity" jurisdiction statute, concern the relative diversity of state citizenship of the parties, a set of facts usually irrelevant to the factual basis of the controversy. While determining whether a federal district court possess-

es jurisdiction over a case brought under 28 U.S.C. § 1331, the "federal question" jurisdiction statute, is often more complex, *cf. United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), it is often based upon discernibly distinct elements within the parameters of the action.

ary function exception to the Federal Tort Claims Act logically falls within the second of, the four issues to be determined, that dealing with the scope of the law's protection.[9] The discretionary function exception reflects the judgment of Congress that the scope of protection afforded by the tort law will not extend to persons injured by the conduct of employees and officers of the government which is clothed in the exercise of "discretion". Whatever the plaintiff's asserted interests are, be they economic, see *Barton v. United States,* 609 F.2d 977 (10th Cir. 1979), physical, see *First National Bank in Albuquerque v. United States,* 552 F.2d 370 (10th Cir. 1977), proprietary, see *Spillway Marina, Inc. v. United States,* 445 F.2d 876, 878 (10th Cir. 1971), or relational, see *Colorado Insurance Group, Inc. v. United States,* 216 F.Supp. 787, 792 (D.Colo. 1963), they are not entitled to legal protection against the defendant's "discretionary" conduct.

When treated as a substantive issue of tort analysis, this question of the scope of the law's protection is determined, as a general rule, upon the whole record following a trial in plenary fashion with full benefit of the discovery process and the honing effect of the pretrial conference. Why shouldn't the determination of the identical issue for jurisdictional purposes have the advantage of a complete record as a foundation? The analytical processes involved prove functionally the same. In determining whether the Government's conduct as

challenged herein is "discretionary" within the meaning of § 2680(a), and whether the scope of the law's protection extends to the plaintiffs' interests herein, this Court must weigh administrative, economic, prophylactic and ethical factors similar to those considered in any negligence action. See L. Green, "The Duty Problem in Negligence Cases," 28 *Columbia Law Review* 1014, 1034 (1928); L. Green, "The Duty Problem in Negligence Cases: II," 29 *Columbia Law Review* 255 (1929). At most, the "jurisdictional" nature of the discretionary function exception would seem to require that this Court determine this issue first. This can, of course, be accomplished procedurally through the order in which this Court decides and announces each element of the causes of action. A finding in favor of the Government on the discretionary function issue [10] would obviate the necessity of making any further findings of fact or conclusions of law as to a specific claim. A "preferred order of proof" would seem neither needed nor helpful. Compare *United States v. Stipe,* 653 F.2d 446 (10th Cir. 1981) (preferred order of proof in criminal conspiracy cases). The burden remains upon the plaintiffs to prove that the conduct of the defendant that allegedly resulted in the claimed injuries does not fall within the scope of the jurisdictional defense of § 2680(a), the discretionary function exception. See *Baird v. United States,* 653 F.2d 437, 440 (10th Cir. 1981).[11]

**9.** This issue in tort analysis is often characterized as the "duty" issue, i.e., whether the law imposes a duty upon the defendant to conform to a particular standard of conduct toward another, particularly the plaintiff. Prosser, Law of Torts 324 (4th ed. 1971).

The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.... A man is entitled to be as negligent as he pleases toward the whole world if he owes no duty to them. *Le Lievre v. Gould,* [1893] 1 Q.B. 491, 497 (Lord Esher).

To say that the defendant owes a duty to the plaintiff is functionally a shorthand manner of stating the conclusion that the plaintiff's interests are entitled to legal protection as against conduct by the defendant that falls short of a

legal standard. See Prosser, *supra,* at 325; L. Green, "The Duty Problem in Negligence Cases," 28 *Columbia Law Review* 1014 (1928). The discretionary function exception acts as a legislative yardstick for measuring the scope of the Government's duty to the public. Congress has said, in effect, that governmental officers who exercise "discretion" within § 2680(a) owe no duty of care to avoid negligent or wrongful injury to the interests of a universal class of plaintiffs.

**10.** The same may be said of the statute of limitations issue. See *infra.*

**11.** The plaintiffs already bear the heavy burden of the first issue of tort analysis, the factual connection between plaintiffs' injuries and the defendant's conduct. Was the defendant's testing program the cause in fact of the plaintiffs'

In summary, this Court declines to further hear evidence or otherwise consider the applicability of the discretionary function exception to the proceedings at bar prior to full trial on the merits. The Federal Rules of Civil Procedure vest the courts with broad discretion to bifurcate, consolidate or otherwise coordinate issues and actions in litigation in the most effective manner. See Rule 42, F.R.Civ.P.; 5 Moore's Federal Practice ¶¶ 42.01 *et seq.* Where, as here, the jurisdictional issues are hopelessly inextricable from the facts to be proven under the substantive claims, denial of a separate trial of those issues is proper. Cf. *Nordberg Mfg. Co. v. Barber-Greene Co.*, 47 F.R.D. 299, 300–301 (N.D.Ill. 1968). The Government does not deny that this Court retains continuing power to determine its jurisdiction over the plaintiffs' claims, see *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677,. 91 L.Ed. 884 (1947), a determination that this Court chooses to make upon a complete record. As Judge A. Sherman Christensen, now Senior District Judge for this District, commented in similar litigation more than 26 years ago,

> Within the perimeter of the pleadings I believe evidence could properly be received of acts in the scope of employment of agents of the Atomic Energy Commission which would not involve discretion or judgment and which, thus, would not be excluded either as a basis of liability under the Tort Claims Act or as a basis of individual liability. Whether such evidence is actually available is a point which is not before the Court. This evidence can be appraised at the proper time. Determinations as to the discretionary nature of specific acts or omissions may be difficult. Any mistakes in connection therewith may involve departures from the intent of Congress. If not corrected they may set patterns for similar departures. *This can be best avoided in this case by hearing the evidence.* But if the Government's position now were sustained on the pleadings, the [Federal

Tort Claims] Act would be weakened, not by mere erosion, but by a virtual landslide which would remove from the buttress erected by Congress against governmental irresponsibility huge areas of activity in disregard of the real nature of the elements involved.

*Bulloch v. United States*, 133 F.Supp. 885, 892–893 (D.Utah 1955) (emphasis added).

As a brief comment preliminary to that trial, this Court notes that there is little if anything that appears now that would render the substance of the plaintiffs' claims unsuitable for resolution through the judicial process. The federal courts have dealt with radiation injury claims against the United States, *e.g., Kuhne v. United States*, 267 F.Supp. 649 (E.D.Tenn. 1967); Annot., 73 A.L.R.2d 1301 (1980), have resolved claims against the Government for allegedly negligent failure to warn persons of risks created by governmental conduct, see *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Smith v. United States*, 546 F.2d 872 (10th Cir. 1976), *United States v. White*, 211 F.2d 79 (9th Cir. 1954), and have developed standards measuring the scope of such a duty to warn, even as to radiation hazards. See *e.g., High Voltage Engineering Corp. v. Pierce*, 359 F.2d 33 (10th Cir. 1966). Judicially manageable standards have been applied to judge considerations of weather conditions, timing, etc., in reviewing the test-firing of sophisticated devices such as rocket engines or similar devices. See *e.g., Pigott v. United States*, 451 F.2d 574 (5th Cir. 1971); *H.L. Properties, Inc. v. Aerojet-General Corp.*, 331 F.Supp. 1006 (S.D.Fla. 1971). In fact, counsel for the Government has testified to Congress that the factual causation issues in litigation of this type, "while they are difficult and raise complex evidentiary issues, are not dissimilar from other scientific issues which may arise in litigation." Testimony of William Schaffer, in "Low-Level Radiation Effects on Health," Hearings, House Committee on Interstate and For-

---

injuries? Two prior cases involving similar claims were resolved by determination of this first issue in favor of the Government. See

*Bartholomae v. United States*, 253 F.2d 716 (9th Cir. 1958); *Bulloch v. United States*, 145 F.Supp. 824 (D.Utah 1956) (J. Christensen).

eign Commerce, 96th Cong., 1st Sess., Serial No. 96–129, at 241 (1979). The current Solicitor General of the United States, Rex Lee, testified that in his opinion, radiation cases "which arise out of the Nevada test bomb experience, can be handled under the existing provisions of the Federal Tort Claims Act, and, if they can, they should be." *Id.*, at 238 (Testimony of Dean Rex Lee, Brigham Young University Law School).[12]

It is, therefore, readily apparent that, jurisdictional considerations permitting, a court could adequately adjudicate the plaintiffs' claims as borne out or defeated by the facts themselves.

## II. THE STATUTE OF LIMITATIONS

Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879), reflect a commonplace legislative judgment that a party should be put on notice to defend the legal claims against him within a reasonable time after the claims have accrued.

> These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *United States v. Marion*, 404 U.S. 307, 322, n. 14 [92 S.Ct. 455, 464, n. 14, 30 L.Ed.2d 468] (1971); *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428 [85 S.Ct. 1050, 1054, 13 L.Ed.2d 941] (1965); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 [65 S.Ct. 1137, 1142,

89 L.Ed. 1628] (1945); *Missouri, K. & T. R. Co. v. Harriman*, 227 U.S. 657, 672 [33 S.Ct. 397, 401, 57 L.Ed. 690] (1913); *Bell v. Morrison*, [26 U.S.] 1 Pet. 351, 360 [7 L.Ed. 174] (1828).

*United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). 28 U.S.C. § 2401(b), the statute of limitations for the Federal Tort Claims Act, reflects the judgment of Congress that tort claims against the Government are appropriately timely if presented within two years after they accrue. Under some circumstances, however, courts have been justified in determining that a particular plaintiff's cause of action has "accrued" at a time long after the allegedly tortious conduct on the part of the defendant and long after the two-year period would normally have run. Often these are cases in which the injury to the plaintiff first manifests itself months or years following its apparent cause. See *e.g., Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976). In such cases, the plaintiff's "blameless ignorance" of the basis for his claim is held to toll the running of the statute of limitations, notwithstanding the force of the policies favoring the statute's application. *Urie v. Thompson, supra,* at 169–170, 69 S.Ct. at 1024.

In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the United States Supreme Court held that a cause of action under the Federal Tort Claims Act "accrues" when the plaintiff knows of the fact of his injury and its cause:

> That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plain-

---

12. One approach suggested by Dean Lee to the tricky factual causation issues in this type of litigation was as follows:

> One is to say that inasmuch as Government caused some of the injury, and inasmuch as statistically the number caused by Government is considerably greater than those not caused by Government, then application of the traditional more probably than not test

would indicate that the Government should be responsible for all, by analogy to the old *Summers v. Tice* case [33 Cal.2d 80, 199 P.2d 1 (1948)].

*Id.*, at 239. Under Dean Lee's formulation, "the burden ought to be shifted so that *the Government* must show that it, in fact, was *not* responsible for all." *Id.* (emphasis added).

tiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

*Id.*, 444 U.S. at 122, 100 S.Ct. at 359. See *Nielson v. Seaborg*, 348 F.Supp. 1369, 1371 (D.Utah 1972) (J. Anderson).

*Kubrick* does not toll the operation of the statute of limitations until a plaintiff discovers that he has a *legal claim* against the Government arising from his injury; a plaintiff, "armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government." *Id.*, 444 U.S. at 123, 100 S.Ct. at 360 (footnote omitted). The inquiry to be made in each case, therefore, is whether the plaintiff knew (1) that he or she has been injured in fact, and (2) that he or she was injured by a particular known cause. The plaintiff need not know the full extent of his or her injury. *Robbins v. United States*, 624 F.2d 971 (10th Cir. 1980). Nor must the plaintiff know the cause of his or her injury in exhaustive detail. 28 U.S.C. § 2401(b) commences to run from the point at which the plaintiff's knowledge of his injury and its cause is sufficient to fairly justify placing the burden of inquiry upon him as to its legal consequences. The United States Court of Appeals for the Tenth Circuit steadfastly adheres to the principles of *Kubrick*, as will this Court in these proceedings. See *Gustavson v. United States*, 655 F.2d 1034 (10th Cir. 1981).

Determining precisely what knowledge the hundreds of individual plaintiffs were "armed with" regarding the claims asserted herein, however, is not readily susceptible to wholesale *a priori* determination. The injuries alleged by the complaint herein are largely nonspecific as to cause. The fact that a plaintiff has discovered that he or she has contracted a form of leukemia, for example, does not without more lead a person to the conclusion that the Government has caused the disease through one means or another and that attorneys should be consulted as to the Government's potential liability. This is particularly true if, as plaintiffs have alleged, the Government has deliberately eschewed any cause-in-fact relationship between such injuries and its nuclear testing activities, and has consistently and with great authority made such denials for years.

■ The appropriate inquiry *as to each plaintiff* would seem to be whether more than two years prior to the filing of the plaintiff's claim the information known to, or reasonably imputed to the plaintiff was sufficient to put the plaintiff on notice that (1) he or she had been injured, and (2) that exposure to radioactive products of the Government's Nevada testing program is the cause of that injury to the reasonable exclusion of alternative causes. Where the information possessed by a plaintiff was sufficient to satisfy this dual inquiry, his or her claim is barred by 28 U.S.C. § 2401(b); where it was insufficient, the plaintiff may now proceed.

■ The Government urges that information provided through the mass media as to the effects of radioactive fallout from the Nevada testing program was substantive and pervasive enough to justify this Court in imputing sufficient knowledge as to cause to all of the plaintiffs *per se.* Extensive exhibits were provided detailing the coverage given by major newspapers, magazines, etc. during the testing program as well as subsequent to the cessation of open-air nuclear tests. However, just because a given piece of information is published in *Time* magazine on a particular date does not compel any court to charge a whole community, or the whole world, with knowledge of the contents thereof, or to conclusively presume that the information published is specifically accurate, or that it is presented in a form and manner calculat-

ed to inspire informed personal deliberation on the subject matter by its readers, or the general public. A review of the press coverage of the radioactive fallout controversy as submitted by both plaintiffs and the Government reveals statements that are alarming, statements that are reassuring, statements that are specific, statements that are vaguely ambiguous. The exhibits are contradictory, often unclear, and sometimes glaring with irony.[13] Beyond that, the Government does not seriously assert that each and every plaintiff herein had seen and read all of the coverage reflected in the exhibits, or even most of it.

This Court's own experience instructs it that people pay varying degrees of attention to events of public concern. Some individuals inform themselves in detail about relatively obscure matters, while others can remain nearly oblivious to news items that capture headlines for days. Each individual plaintiff, whether he or she has resided in Salt Lake City with its mass media network, or in Cedar City, or St. George, or Panguitch, or Hurricane, or Mount Carmel Junction, at the times relevant to this action, is lawfully entitled to an individualized determination of the statute of limitations issue as to his or her claim. That the plaintiffs herein are numerous should in no way be allowed to prejudice each individual's opportunity to seek a just adjudication of his or her claim. On this issue, fairness requires us to ask as to each litigant, "What did the plaintiffs know, and when did he or she know it?"

While the overall body of proof that the individualized determinations may require

may appear unduly burdensome, I remind the parties that the injuries alleged in this case are hardly speculative or de minimis; they are indeed grave and have often proved fatal. Where people's lives are involved, extraordinary care should be given to the presentation and evaluation of all of the evidence.

As with the discretionary function exception issue, this Court declines to accept the Government's suggestion that the statute of limitations issue be determined through the device of a preliminary "mini-trial" of the facts. Both the plaintiffs and the Government should have the benefit of an adjudication of the issues upon a complete record and this Court intends to proceed in that fashion. The limitations issue having been raised by the Government, the plaintiffs now bear the burden of proof as to the issue; they are in the better position to go forward in presenting the relevant evidence as to each plaintiff's knowledge under the Kubrick standard as part of their burden of establishing this Court's jurisdiction over their claims. See DeWitt v. United States, 593 F.2d 276, 281 (7th Cir. 1979); Lukenas v. Bryce's Mountain Resort, 538 F.2d 594, 597 (4th Cir. 1976); Mann v. United States, 399 F.2d 672 (9th Cir. 1972); Humphreys v. United States, 272 F.2d 411 (9th Cir. 1959).

## III. THE MISREPRESENTATION EXCEPTION

At page 23, note 21, of its Motion to Dismiss for Lack of Jurisdiction (Discretionary Function), the Government asserts that the plaintiffs' claims that the United States

---

13. Consider, for example, the statement by Dr. G. W. Beadle, then President of the American Association for the Advancement of Science, quoted in the Deseret News for May 17, 1955:

Dr. G. W. Beadle ... said in a speech to the Medical Research Association of California Monday night that there was virtually no danger to individuals resulting from the minute increases in radiation from atomic tests.

He said the danger of ill effects from radiation was "comparable to the danger of acquiring lung cancer from smoking cigarettes."

Id., at 5. Of course, we now know only too well the immense human and social costs ac-

cruing from the smoking of cigarettes and other tobacco products:

[T]he hard facts [are] that cigarette smoking kills more than 320,000 Americans each year; 220,000 from heart disease, 78,000 from lung cancer, 22,000 from other cancer, and the rest from respiratory ailments such as chronic bronchitis and emphysema. I also emphasized the enormous public and private costs of smoking each year: $7 billion in health care, $18 billion in absenteeism, lost wages and lower productivity.

Joseph A. Califano, Jr., Governing America 185–186 (1981).

is liable for giving false assurances as to the safety of exposure to radioactive fallout are barred by the "misrepresentation" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h). Section 2680(h) excepts from the operation of the Act "[a]ny claim arising out of ... misrepresentation, deceit," and other specific intentional torts.

It seems clear, however, that 28 U.S.C. § 2680(h) "protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official." *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (en banc). The exception reaches actions for misrepresentation or deceit in the classic sense, see W. Prosser, Law of Torts § 105 at 683 *et seq.* (4th ed. 1971), in which the plaintiff's asserted interest is pecuniary or economic. See *Green v. United States*, 629 F.2d 581, 584 (9th Cir. 1980). Where plaintiffs have asserted injuries to interests which are not pecuniary or commercial, courts have held that § 2680(h) does not preclude their claims. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *United States v. Neustadt*, 366 U.S. 696, 711 n. 26, 81 S.Ct. 1294, 1302 n. 26, 6 L.Ed.2d 614 (1961); *Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227 (2d Cir. 1967), cert. denied, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292; *Betesh v. United States*, 400 F.Supp. 238 (D.D.C. 1974). Where a plaintiff's physical well-being has been injured by, in part, false assurances given by the Government regarding the safety of its activities, the courts have readily found liability. See *e.g., United States v. White*, 211 F.2d 79, 81 (9th Cir. 1954).

The plaintiffs herein, insofar as they are pursuing claims for other than pecuniary, economic and commercial injuries, are not barred from proceeding by 28 U.S.C. § 2680(h).

## IV. CONCLUSION

For the reasons stated herein above, the defendant's Motions to Dismiss for Lack of Subject Matter Jurisdiction pursuant to 28 U.S.C. §§ 2401(b) and 2680(a) are hereby DENIED without prejudice to their reassertion upon a more complete record. This litigation shall now proceed upon the timetable set by this Court.