Mary Alice **RELF** et al., Plaintiffs,

v.

**UNITED STATES of America et al., Defendants.**

Civ. A. No. 74–224.

United States District Court, District of Columbia.

Jan. 29, 1977.

Kent A. Russell, admitted pro hac vice, of Belli, Ashe & Choulos, San Francisco, Cal., and Henry E. Weil of Belli, Weil & Jacobs, Rockville, Md., for plaintiffs.

Donald E. Jose, Trial Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This action is brought on behalf of two black females who allege that at the respective ages of twelve and fourteen they were wrongfully subjected to surgical tubal sterilization without the informed consent of their parents. These sterilizations were performed on June 14, 1973 in Montgomery, Alabama by medical personnel of the Mont-gomery Family Planning Clinic ("Clinic") under the auspices of the Montgomery Community Action Committee ("Montgomery CAC"). This latter organization was created pursuant to 42 U.S.C. § 2790 for the purpose of carrying out the policies of the Economic Opportunity Act, 42 U.S.C. §§ 2701 et seq.; at the time pertinent to this action, it was a federal grantee receiving funds from the Office of Economic Opportunity ("OEO").

On February 4, 1974, plaintiffs filed this action against the United States and against several federal officers in their personal as well as their official capacities.[1] They charged these officials with negligence in connection with a decision made within the Executive Branch[2] not to issue and distribute certain sterilization guidelines[3] to OEO grantees such as the Montgomery CAC.[4] Recovery was sought also against the United States under the Federal Tort Claims Act[5] both on the basis of this alleged negligence within the Executive Branch and for the alleged tortious conduct of the local Clinic and Montgomery CAC personnel directly involved in the sterilization procedures.

On October 7, 1976, plaintiffs entered a voluntary dismissal with prejudice as to all individual defendants with the exception of Dr. E. Leon Cooper, former Director of Health Affairs for the Office of Economic Opportunity. Presently before the Court are the motions of Dr. Cooper and the United States for summary judgment as to all

---

1. The plaintiffs' complaint named six federal officials:

    John Dean and John D. Ehrlichman, aides to former President Nixon; Phillip V. Sanchez, former Director of the Office of Economic Opportunity; Wesley L. Hjornevik, former Deputy Director of the Office of Economic Opportunity; Dr. E. Leon Cooper, former Director of the Office of Health Affairs of the Office of Economic Opportunity; and Dr. George Contis, former Director of the Family Planning Division of the Office of Economic Opportunity.

2. The ultimate responsibility for the decision at issue rested with the Office of Economic Opportunity, although the record reflects a deliberative process including other departments of the Executive Branch of the Federal Govern-ment. See Affidavit of Wesley L. Hjornevik, Exhibit G to Motion for Summary Judgment on Behalf of the United States. Plaintiffs initially charged that the individually named defendants had engaged in an interagency conspiracy to deprive them of their civil rights. See First Amended Complaint at 2 and 9–11.

3. OEO Instruction 6130–2 (unissued), Exhibit # 6 to Plaintiffs' Opposition to the United States' Motion for Summary Judgment.

4. See notes 9 and 15 infra and accompanying text.

5. 28 U.S.C. § 1346(b) and 2671 et seq.

claims.[6] For the reasons set forth briefly below, the Court finds that both motions for summary judgment should be granted.

## I. *THE GOVERNMENT'S MOTION*

When the plaintiffs initially brought this action, they sought to recover against the United States on dual theories of Federal Tort Claims Act liability. First, they sought to hold the federal government liable for the alleged tortious acts of the Clinic and Montgomery CAC personnel directly involved in the sterilization procedures, under the asserted theory that those persons were "federal employees" within the meaning of the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Second, they advanced an assertion of federal liability in connection with certain specific actions (or inactions) of several federal officials in Washington, D.C. The United States has moved for summary judgment, arguing that it bears no Federal Tort Claims Act liability under either of these two theories.

With respect to plaintiffs' first asserted theory of recovery, the Supreme Court has recently resolved the controversy respecting the status of federal grantee personnel in connection with attempts to impose federal liability for their alleged torts. In *United States v. Orleans*, 425 U.S. 807, 816–819, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), a unanimous Court held that a community action agency which was established and maintained with OEO funding is not a federal agency and its employees are not federal employees for purposes of federal liability under the Federal Tort Claims Act.[7] The Court accordingly reversed the Sixth Circuit decision upon which these plaintiffs relied[8] and approved the line of cases which had established the prevailing weight of authority on this question. *See, e. g., Vincent v. United States*, 513 F.2d 1296, 1297–98 (8th Cir. 1975); *Hughes v. United States*, 383 F.Supp. 1071, 1072 (S.D.Iowa 1973). Consequently, plaintiffs' counsel disregarded this theory of recovery in their final pleadings and formally withdrew it at oral argument.

Plaintiffs' second and only remaining theory of recovery against the United States stems from the decision made within the Office of Economic Opportunity not to issue and distribute certain sterilization guidelines, a decision which plaintiffs assert to be the proximate cause of their allegedly wrongful sterilizations.[9] It is undisputed that in May of 1971 the Office of Economic Opportunity changed its policy toward sterilization as embodied by OEO Instruction 6130–1.[10] This Instruction amended an earlier OEO regulation[11] by removing the then-existing prohibition on the use of OEO funds for surgical sterilizations. It did not, however, expressly authorize any grantees to use OEO funds for this purpose; it merely evidenced a new policy under which the Office of Economic Opportunity would consider the funding of sterilization programs

---

**6.** Counsel for all parties agreed at oral argument that there is little dispute concerning the facts of this case and absolutely no controversy concerning the limited set of facts material to the legal issues before the Court for its consideration of the pending motions for summary judgment.

**7.** The Court stated its ruling in no uncertain terms:

It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of "beneficiaries." * * * Nothing could be plainer than the congressional intent that the local entities here in question have complete control over operations of their own programs with the Federal Government supplying financial aid, advice and oversight only to assure that fed-

eral funds not be diverted to unauthorized purposes.

425 U.S. at 816, 96 S.Ct. at 1977 (footnote omitted).

**8.** *Orleans v. United States*, 509 F.2d 197 (6th Cir. 1975).

**9.** This proximate cause question is not before the Court inasmuch as it has been conceded *arguendo* by the defendants for purposes of their summary judgment motions.

**10.** *See* Exhibit # 1 to Plaintiffs' Opposition to the United States' Motion for Summary Judgment.

**11.** Effected through a document known as Community Action Memo 37–A.

upon the application of a grantee agency, such as the Montgomery CAC.[12]

After the promulgation of this Instruction, the Family Planning Division of OEO's Office of Health Affairs drafted guidelines for any sterilizations to be performed by OEO grantees with OEO funding. These guidelines were finalized as OEO Instruction 6130–2[13] and were printed in preparation for official issuance and distribution to all appropriate grantee organizations. For numerous asserted and contested reasons, however, and in the face of much evident criticism and controversy, defendant Cooper decided not to issue officially this Instruction.[14] It is plaintiffs' contention that such issuance and distribution "would have prevented the tragedy" which befell them.[15]

It is the position of the United States that the particular decisionmaking upon which plaintiffs rest this claim cannot be the basis upon which federal liability may be imposed under the Federal Tort Claims Act. The United States maintains that Dr. Cooper's decision, although most certainly controversial and quite possibly unwise, nevertheless falls squarely within the well-recognized "discretionary function" exception to that Act. Section 2680(a) of the Federal Tort Claims Act provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a) (emphasis added).

In numerous pleadings as well as at oral argument, plaintiffs have argued at great length that the Court should not apply this exception in the instant case. They reason that the promulgation of OEO Instruction 6130–1, which signalled a marked shift in OEO's sterilization policy, was the exercise of a discretionary function, but that the omitted issuance of the sterilization guidelines, OEO Instruction 6130–2 (unissued), "was purely a ministerial act."[16] For support, plaintiffs point out that an appropriate judicial standard for determining the applicability of the discretionary function exception is the "planning vs. operations level" test. Several courts have held that the exception is not applicable where the challenged conduct is at an "operations level," even though such conduct is required for the execution of a planning level decision. *See Eastern Air Lines, Inc. v. Union Trust Co.,* 95 U.S.App.D.C. 189, 221 F.2d 62, 78, aff'd per curiam sub nom. *United States v. Union Trust Co.,* 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796 (1955); *Swanson v. United States,* 229 F.Supp. 217, 221 (N.D.Cal. 1964). Plaintiffs therefore make the argument that Dr. Cooper's decision to withhold distribution of the finalized and printed guidelines involved what was a mere operational implementation of the OEO policy change previously announced. Although plaintiffs have advanced scant factual analysis in support of this view, their ultimate conclusion is that this Court should find Dr.

---

12. *See* Exhibit # 1 to Plaintiffs' Opposition to the United States' Motion for Summary Judgment. *See also* Deposition of Dr. E. Leon Cooper at 42–49, 92.

13. Exhibit # 6 to Plaintiffs' Opposition to the United States' Motion for Summary Judgment.

14. It is noted that Dr. Cooper's decision to withhold issuance of the guidelines pending resolution of his numerous policy concerns was expressly concurred in by his immediate superior (Wesley L. Hjornevik, then Deputy Director of OEO) and also tacitly approved by OEO Director Phillip V. Sanchez. Affidavit of Wesley L. Hjornevik, Exhibit G to Motion for Summary Judgment on Behalf of the United States at 2.

15. Plaintiffs' Opposition to the United States' Motion for Summary Judgment at 11. *See also* Affidavit of Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 3.

16. Plaintiffs' Opposition to the United States' Motion for Summary Judgment at 13.

Cooper's decision to be outside of the exception because it was assertedly not "based on considerations of public policy."[17]

However, the Court finds that Dr. Cooper's decision not to officially issue and distribute the sterilization guidelines pending the resolution of existing policy concerns is exactly the type of decisionmaking which Congress had in mind when enacting the discretionary function exception to the Federal Tort Claims Act. *See Monarch Insurance Co. of Ohio v. District of Columbia,* 353 F.Supp. 1249, 1258 (D.D.C.1973), *aff'd,* 162 U.S.App.D.C. 97, 497 F.2d 684 (1974). As has been stated by the Supreme Court in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the discretionary function exception is properly construed to include "determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Id.* at 35–36, 73 S.Ct. at 968. Although this construction has been narrowed somewhat by later cases,[18] the exception unquestionably applies to decisions which of necessity involve the conscious balancing of policy considerations. *J. H. Rutter Rex Manufacturing Co. v. United States,* 515 F.2d 97, 99 (5th Cir. 1975); *see Griffin v. United States,* 500 F.2d 1059, 1064 (3rd Cir. 1974). *See also Moyer v. Martin Marietta Corp.,* 481

F.2d 585, 597–98 (5th Cir. 1973). This would seem to be most particularly so with respect to those high-echelon decisions which by their very nature require the careful consideration of sensitive political and public policy factors. *See Monarch Insurance, supra* at 1258.

Such was necessarily the nature of Dr. Cooper's decision to withhold issuance of the sterilization guidelines. The evidence adduced shows without rebuttal that at the time of Dr. Cooper's allegedly negligent failure to act there existed within OEO substantial public policy concerns about the use of federal funds for federally-authorized sterilizations.[19] At the same time, he evidently was under heavy competing pressure to issue the guidelines and thus irrevocably deepen OEO's commitment toward that controversial social policy.[20] Whether or not Dr. Cooper's decision was the wisest choice available—a determination which this Court is neither prepared nor is it required to make—it appears clear that it was by definition a choice alternately influenced and circumscribed by policy constraints and considerations of the public interest well within the parameters of the discretionary function exception. Indeed, even the affidavit testimony of plaintiffs' chief witness, an OEO official under Dr. Cooper's supervision who evidently took strong exception to his decision,[21] lends corroborative support to

17. *Id.* at 14. Plaintiffs sum up their position as follows: "Therefore, if the public official must make a decision based on considerations of public policy, the decision is discretionary." *Id.*

18. *See, e. g., Rayonier, Inc. v. United States,* 352 U.S. 315, 319–20, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Pigott v. United States,* 451 F.2d 574, 575 (5th Cir. 1971); *Smith v. United States,* 375 F.2d 243, 248 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

19. *See, e. g.,* Deposition of Dr. E. Leon Cooper at 8, 22–23, 63–64 and 123; Affidavit of Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 4; Affidavit of Wesley L. Hjornevik, Exhibit G to Motion for Summary Judgment on Behalf of the United States

at 2; Affidavit of Dr. E. Leon Cooper, Exhibit F to Motion for Summary Judgment on Behalf of the United States at 2; Deposition of James H. Cavanaugh, former Deputy Assistant to the President of the United States, at 28, 31, 38–39, 41 and 42. *See also* note 14 *supra.*

20. *See, e. g.,* Deposition of Dr. E. Leon Cooper at 21, 22, 84, 93, 99, 117 and 149–50; Affidavit of Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 3, 4; Affidavit of Wesley L. Hjornevik, Exhibit G to Motion for Summary Judgment on Behalf of the United States at 2; *see* note 12 *supra* and accompanying text.

21. Dr. Warren Hern, who as Chief of the Program Development and Evaluation Branch within OEO's Family Planning Division was directly involved in formulating the controversial guidelines, attests that he "resigned in protest" over Dr. Cooper's decision not to issue

the conclusion that Dr. Cooper based that decision upon an active (to the point of sustained direct challenge) consideration of pressing policy concerns. Affidavit of Dr. Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 4, 5. *See also* testimony of Dr. Hern before the Senate Health Subcommittee, July 10, 1973, Exhibit # 9 to Plaintiffs' Opposition Memorandum at 1.

▮ It seems to the Court that throughout the course of this litigation the plaintiffs have consistently misconceived the circumstances under which liability may properly be imposed upon the federal government under the Federal Tort Claims Act. Aside from their first theory of recovery which was conclusively rejected by the Supreme Court,[22] they have also made an alternative argument which asks this Court to impose federal liability on the theory that Dr. Cooper's decisionmaking amounted to a "gross abuse" of his discretion. Such an argument, of course, mistakenly overlooks the plain language of the statute pro-

viding directly to the contrary.[23] To the same end, and on the most tenuous of authority,[24] the plaintiffs have advanced the additional novel argument that this Court should hold the federal government liable on the theory that Dr. Cooper was grossly negligent in the exercise of his discretionary authority. What the plaintiffs have clearly attempted to accomplish in this case is to impose Federal Tort Claims Act liability on the strength of their characterization of Dr. Cooper's decision as a monumental error of inexcusable proportions.[25] Yet the harsh fact remains that such a claim is simply not cognizable under the statute on that basis when it concerns the *character* (as distinguished from arguable *quality*) of decisionmaking such as is presented here.

## II. Dr. Cooper's Motion

The plaintiffs have also asserted a claim against Dr. Cooper in his personal capacity in connection with his controversial decision. In response, Dr. Cooper has moved for summary judgment based upon his offi-

officially the guidelines. Affidavit of Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 6. Dr. Hern's affidavit refers to numerous specific instances in which he and Dr. Cooper discussed this difficult question, apparently in the strongest of terms. *Id.* at 3, 4, 5.

**22.** *See* notes 7–8 *supra* and accompanying text.

**23.** The statute reads: ". . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). *See United States v. Morrell*, 331 F.2d 498, 502 (10th Cir.), *cert. denied sub nom. Chournos v. United States*, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964); *Newberg v. Federal Savings & Loan Insurance Corp.*, 317 F.Supp. 1104, 1106 (N.D.Ill.1970). *But see Kuhne v. United States*, 267 F.Supp. 649, 652 (E.D.Tenn.1967) (dicta).

**24.** Plaintiffs place exclusive reliance upon the case of *McNamara v. United States*, 199 F.Supp. 879 (D.D.C.1961) for the proposition that a federal official's gross negligence in the performance of a proper discretionary function may constitute a basis upon which federal liability may be imposed. Although Judge Holtzoff's learned opinion in that case did indeed cast some doubt as to whether the discretionary function exception could immunize the United States from liability in all "conceivable" circumstances of blatant negligence, Judge Holtzoff nevertheless took great care to explain

that it was unnecessary that he reach this speculative question because the governmental activity before him, the "maintenance of a safe condition within a building," was clearly "not a discretionary function." Id. at 881. Plaintiffs have cited no case in this or any other jurisdiction extending this dicta.

**25.** In their pleadings and at oral argument, the plaintiffs have with great regularity referred to the events surrounding the sterilization guidelines as a "bureaucratic bungle" for which the federal government should not escape liability. *See, e. g.,* Plaintiffs' Opposition to the United States' Motion for Summary Judgment at 19; Plaintiffs' Supplemental Opposition to Defendants' Motion for Summary Judgment at 1; Affidavit of Warren Hern in Opposition to Defendants' Motions for Summary Judgment at 4. It is noted in this connection that this succinct alliterative characterization is taken from the headline of an article which appeared in the November 9, 1973 issue of *Medical World News,* Exhibit A to Plaintiffs' Opposition to Individual Defendants' Motions for Summary Judgment at 3. It is further noted that this phrase, although of doubtless value in the commercial realm of popular journalism, nevertheless hardly denotes a category of conduct automatically cognizable under the Federal Tort Claims Act.

cial immunity as a federal officer. *Barr v. Matteo,* 360 U.S. 564, 571–75, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). He argues that his decision not to issue the sterilization guidelines was well within the scope of his specific official responsibilities and duties, not to mention the "outer perimeter" of those duties. *Barr v. Matteo, supra,* 360 U.S. at 575, 79 S.Ct. 1335. He also incorporates by reference the United States' prevailing argument that his decision was the exercise of a discretionary function, one which should not be "unduly inhibited . . . by the threat of liability for tortious conduct." *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358, 362 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

▇ In their opposition, plaintiffs fail to meet this legal issue, nor for that matter do they demonstrate any true realization of their burden to do so. Rather, they take itemized issue with numerous factual statements contained in Dr. Cooper's affidavit concerning the asserted correctness of his decision. As Dr. Cooper in reply accurately points out, however, the correctness of his decision is not a material issue before the Court in its consideration of his motion. In point of fact, the only material issue presented is whether Dr. Cooper was acting within the protective scope of his official immunity when he engaged in the conduct (or non-conduct) alleged. Plaintiffs appear to rest their position on this legal issue upon their bare allegation that Dr. Cooper's inaction was the product of a "personal motive not connected with the public good."[26] Aside from their failure or inability to further elaborate, it is in any event clear that "[t]he claim of an unworthy pur-

pose does not destroy the privilege." *Barr v. Matteo, supra,* 360 U.S. at 575, 79 S.Ct. at 1341, *quoting with approval Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

▇ The Court notes that the Court of Appeals for this Circuit has recently addressed this often complex topic of official immunity in a decision which departs to some extent from the principle set forth in *Barr v. Matteo. See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* No. 74–1899 (D.C.Cir., June 28, 1976).[27] Even under the reasoning and standards articulated by the majority in that decision, as well as under the *Barr v. Matteo* rule advocated by Judge Leventhal in his dissenting opinion,[28] this Court finds that Dr. Cooper is entitled to absolute immunity in connection with his controversial decisionmaking.

The Court of Appeals in *Expeditions Unlimited* set forth the following test for the application of absolute official immunity.

> To summarize, we conclude that absolute immunity should be granted an executive official only where these conditions are met: First, the action at issue must be discretionary and within the scope of employment duties. Second, the court must further find that the extra contribution of absolute immunity to the "effective functioning of government" [*citing Barr v. Matteo*] justifies the concomitant denial of litigant interests, in view of the part played by the challenged activity in defendant's overall performance of duties, and in view of the functions which that official performs, within a traditional conceptual framework of public and private sectors.

(Slip Opinion at 29–30.) As discussed *supra,* this Court has found the first portion

---

**26.** Plaintiffs' Response to Individual Defendants' Motions for Summary Judgment at 6, *quoting Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

**27.** Reargument was heard before the Court of Appeals *en banc* on December 16, 1976. This action effectively vacates the Court's opinion.

**28.** Judge Leventhal criticizes the "particularistic weighting program launched by the majority," and supports the application of the absolute immunity doctrine of *Barr v. Matteo.* (Slip Opinion at 1, 12.) (Leventhal, J., dissenting).

of this standard to be satisfied in the instant case. Further, this Court finds the remainder of the test satisfied to the extent applicable on the basis of the nature of Dr. Cooper's policy responsibilities and the need for executive officers to be free to make decisions similar in type to the decision made by him. *See, e. g., Carter v. Carlson, supra,* 144 U.S.App.D.C. 388, 447 F.2d at 362. Certainly, as the Court of Appeals has foreseen, the analogy to recent Supreme Court precedent upholding absolute immunity[29] is "striking." (Slip Opinion at 27.)

Accordingly, the Court finds that both defendants are entitled to summary judgment as a matter of law and that their motions should be granted.

---

**29.** In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court applied an absolute immunity standard to a state prosecutor's decisionmaking and pointed to the "intolerable burdens" which would result from the application of a mere qualified privilege. *Id.* at 426, 96 S.Ct. 984.