DISTRICT OF COLUMBIA,
et al., Appellants,

v.

Marc JONES, Appellee.

No. 06–CV–23.

District of Columbia Court of Appeals.

Argued Nov. 17, 2006.
Decided March 29, 2007.

Donna M. Murasky, Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellants.

Gregory L. Lattimer, Washington, for appellee.

Before FARRELL, RUIZ, and FISHER, Associate Judges.

FISHER, Associate Judge:

■ Marc Jones sued Anthony Williams, who was then the Mayor of the District of Columbia, alleging defamation and related torts. Ruling on the District of Columbia's motion to dismiss, the Superior Court rejected the Mayor's claim of absolute immunity, and this interlocutory appeal followed.[1] The trial court denied the motion, concluding that it needed additional information which might be disclosed during discovery. Mayor Williams contends this was error because the facts alleged in the complaint demonstrate that absolute immunity applies, and subjecting him to the burdens of discovery and addi-

---

1. The denial of a motion that asserts absolute immunity from suit is immediately appealable under the collateral order doctrine, so long as the ruling turns on an issue of law rather than a factual dispute. *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Finkelstein, Thompson, & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 339–40 (D.C.2001).

tional litigation would defeat the purposes served by the immunity doctrine. We agree and order dismissal of the complaint.

## I. The Factual and Procedural Background

Marc Jones served as Mayor Williams' Deputy Chief of Staff from April 2000 through early 2001, and fund-raising was one of his responsibilities. According to Jones's complaint, in early 2001 various news organizations began to question the fund-raising activities of the Mayor's Executive Office. In response to this scrutiny, the complaint alleges, Mayor Williams placed Jones on administrative leave and told the media that he had done so because Jones was involved in improper fund-raising. In September 2001 Jones was terminated from his position. He claims that Mayor Williams thereafter made numerous remarks placing primary responsibility on Jones for any wrongdoing. Jones also claims that the Mayor falsely denied knowing of these activities.

Jones quotes two of the Mayor's statements in his complaint. On January 10, 2002, Mayor Williams allegedly stated, "It is clear to me that former members of my staff made serious mistakes.... These mistakes happened on my watch. These mistakes represent, as far as I am concerned, a failure of delegation in a number [of] different ways and an abysmal management control environment in this area." The second statement was made when *The Washington Post* informed Mayor Williams of Jones's assertion that the Mayor knew all about the fund-raising activities. Mayor Williams responded, "I d not

know the details at the level that [Jones is] talking about." Jones seems primarily to complain that the Mayor falsely denied knowing of his activities and made those false allegations "to protect himself politically at the known expense of [Jones's] reputation, character, and integrity." [2]

In August 2002 Jones filed suit, alleging that the Mayor's statements were false and malicious. Jones sought recovery for defamation, invasion of privacy (false light), and intentional infliction of emotional distress. Mayor Williams filed a Rule 12(b)(6) motion, and the Superior Court dismissed the suit for failure to exhaust administrative remedies. Jones appealed, and the Mayor agreed that this had not been a proper ground for dismissal. He argued, however, that the order of dismissal should be affirmed on the alternative ground that he had absolute immunity from the suit. This court declined to rule on absolute immunity in the first instance, and we remanded for further proceedings. *Jones v. Williams*, 861 A.2d 1269, 1270 (D.C.2004), *as amended by* 890 A.2d 178 (D.C.2005).

On remand, the Superior Court helpfully clarified the issues that are now before us. "[Jones] is not alleging that the Mayor had no right to strip him of his job responsibilities or, ultimately, to fire him." [3] Rather, he is "alleging that the Mayor, for private reasons and for personal gain, knowingly lied about him and continued to lie after [Jones] was no longer a government employee." The court acknowledged that "[t]he prejudice to the Mayor and the office of the Mayor [will be] particularly strong if, in the end, [Jones] has no case at

---

**2.** This is a rather unusual claim of defamation because Jones does not appear to assert that he is innocent of wrongdoing. Rather, the gist of his complaint seems to be that the Mayor is also culpable because he knew about and even authorized improper fund-raising.

Nevertheless, in this procedural context we assume that Jones has properly pleaded the elements of the torts he alleges.

**3.** Jones agrees that this "is not an employment case in any shape, form or fashion."

all when tested against [the Mayor's] inevitable motion for summary judgment." Nevertheless, the court concluded, "resolution of [the Mayor's] legal arguments must await discovery and a motion for summary judgment filed after the close of discovery."

■ In this court appellant Williams renews his argument that he is absolutely immune from this suit alleging common law torts. He contends that subjecting him to the burden of discovery and other litigation procedures would interfere needlessly and impermissibly with the functioning of the Mayor's office and the District of Columbia government.[4] He also argues that absolute immunity applies regardless of the motives that prompted the allegedly tortious statements. Jones counters that absolute immunity does not apply because the actions at issue were outside the scope of Mayor Williams' official duties. He asserts that the statements "were completely self-serving and personal and were made exclusively for the purpose of advancing [the Mayor's] political career."

## II. The Doctrine of Absolute Immunity

■ The law recognizes the doctrine of absolute immunity in order to serve the public interest in effective government. "The provision of immunity rests on the view that the threat of liability will make ... officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits." *Westfall v. Erwin*, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).[5] As the Supreme Court explained in *Barr v. Matteo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959):

> [O]fficials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—

---

4. The fact that appellant Williams no longer is the Mayor of the District of Columbia does not change the outcome of our immunity analysis. Of course, one of the reasons for extending absolute immunity is the concern that lawsuits will divert the time and attention of public officials from their governmental duties. *See, e.g., Barr v. Matteo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). That concern obviously no longer applies to Mayor Williams, who left office on January 2, 2007. However, the principal reason for conferring absolute immunity is to ensure that officials are not deterred from taking timely and effective action by the threat of future lawsuits. *E.g., id.* at 571–72, 79 S.Ct. 1335 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949)). The threat of lawsuits after an official leaves office might well inhibit his or her "fearless, vigorous, and effective administration of policies of government" while in office. *See Barr*, 360 U.S. at 571, 79 S.Ct. 1335 (source of quotation). Many decisions have, without comment, extended to former officials absolute immunity from lawsuits based on actions they took while in office.

*See, e.g., Nixon v. Fitzgerald*, 457 U.S. 731, 749, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (former President); *Lawrence v. Acree*, 215 U.S.App. D.C. 16, 665 F.2d 1319 (1981) (defendants, including a former regional director for internal affairs of federal agency, had absolute immunity from suit for non-constitutional tort); *Windsor v. The Tennessean*, 719 F.2d 155, 157–58, 166 (6th Cir.1983) (upholding dismissal on ground of absolute immunity of claims against former United States Attorney for defamation, malicious interference with employment, and "outrageous conduct"); *Relf v. United States*, 433 F.Supp. 423 (D.D.C.1977) (applying *Barr v. Matteo* and holding that former director was entitled to absolute immunity in connection with his controversial decision-making), *aff'd w/o opinion*, 193 U.S.App. D.C. 217, 593 F.2d 1371 (1979).

5. We have omitted the word "federal" from this quotation because our court has adopted this view of immunity as a matter of local law. *See Moss v. Stockard*, 580 A.2d 1011 (D.C.1990).

suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

In the District of Columbia, the standard for conferring absolute immunity is set forth in *Moss v. Stockard*, 580 A.2d 1011 (D.C.1990). Absolute immunity applies when conduct is (1) within the "outer perimeter" of official duties, and (2) the governmental function at issue was "discretionary" rather than "ministerial." *Id.* at 1020. *Accord, Westfall v. Erwin*, 484 U.S. at 297–98, 108 S.Ct. 580 (two-pronged standard now superseded by federal statute); *Durso v. Taylor*, 624 A.2d 449, 458 (D.C.1993). Discretionary functions qualify for absolute immunity, but ministerial functions do not. We have explained that "the elements underlying absolute immunity are objective in nature and ascertainable by the judge. Accordingly, whether the act in question is subject to official immunity is an issue for the court...." *Moss*, 580 A.2d at 1020 n. 18.

■ *Moss* adopts the guidelines set forth in *Barr v. Matteo* for determining whether an official's act is within the "outer perimeter" of her duties.[6] After making a "relatively straight-forward identification" of the act that gave rise to the suit, the court must determine whether the official acted "*in relation* to matters commit-ted by law to his control or supervision." *Moss*, 580 A.2d at 1020 (emphasis in *Moss*); *see Barr v. Matteo*, 360 U.S. at 573–74, 79 S.Ct. 1335. The act need not have been "expressly prescribed by statute or performed at the specific direction of a superior...." *Moss*, 580 A.2d at 1020.

■ This lawsuit is based on statements Mayor Williams made to the press[7] regarding Jones's performance on duty and the Mayor's own knowledge of and responsibility for those activities. Informing the public about the conduct of persons serving in the Office of the Mayor certainly is "in relation to" the Mayor's official responsibilities. It cannot fairly be questioned that responding to these inquiries (and accusations) was within the "outer perimeter" of his duties.[8] *See Barr v. Matteo*, 360 U.S. at 575, 79 S.Ct. 1335 (issuance of allegedly libelous press release explaining why he was suspending agency employees, after Congressional criticism of the agency's operations, was "within the outer perimeter of [the acting director's] line of duty"); *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C.1995) ("[T]here can be no question that Deputy Chief Wilson's communications with reporters about Operation Recovery were within the outer perimeters of his duties as Deputy Chief of Police for the Sixth District and as the highest ranking officer at the scene."); *Council on American Islamic Relations v.*

---

**6.** As we recognized in *Moss*, Justice Harlan's plurality opinion in *Barr* "represented the view of a majority of the Court." 580 A.2d at 1019 n. 13. *See Howard v. Lyons*, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959).

**7.** At oral argument, Jones's counsel acknowledged that the complaint is fairly read to say that *all* the statements about which Jones is complaining were made to the press.

**8.** Jones's counsel asserted for the first time at oral argument that the activity giving rise to this lawsuit was fund-raising, and that fund-raising does not qualify for absolute immunity because it is not within the "outer perimeter" of mayoral duties. Although the press was questioning the fund-raising activities of the Mayor's Executive Office, this suit is based on the statements the Mayor made in response to those inquiries. The question is not whether fund-raising is a proper mayoral function but whether accounting to the press and the public for the manner in which his staff conducted itself is an activity qualifying for absolute immunity.

*Ballenger,* 370 U.S.App. D.C. 314, 319, 444 F.3d 659, 664 (2006) ("Speaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's 'authorized duties.' "); *Glass v. Ickes,* 73 App. D.C. 3, 11, 117 F.2d 273, 281 (1940) (issuing press release that allegedly libeled former employee was within the authority and line of duty of Secretary of Interior).

▬▬ We next must decide whether talking to the press about these matters was a "discretionary" or "ministerial" function of the Mayor. This "more complex analysis . . . goes beyond determining simply whether the act entailed a choice among alternatives." *Moss,* 580 A.2d at 1020. Instead, the court must "balance the contending interests and determine whether society's concern to shield the particular government function at issue from the disruptive effects of civil litigation requires subordinating the vindication of private injuries otherwise compensable at law." *Id.* at 1020–21. Adopting a test articulated in *District of Columbia v. Thompson,* 570 A.2d 277, 297 (D.C.1990), *vacated in relevant part on rehearing,* 593 A.2d 621, 624 (D.C.1991), *Moss* lists four factors the court may use to inform its balancing: (1) the nature of the injury, (2) the availability of alternative remedies, (3) the ability of the courts to judge fault without unduly invading the executive's function, and (4) the importance of protecting particular kinds of acts. 580 A.2d at 1021. This list is not exclusive; a court may use other factors it deems relevant. *District of Columbia v. Simpkins,* 720 A.2d 894, 899 (D.C.1998); *Moss,* 580 A.2d at 1021 n. 21, 1022. "[T]he court must evaluate whether the contribution to effective government of the immunity urged

would or would not outweigh the harm to the plaintiff." *Moss,* 580 A.2d at 1021. We have cautioned that "the scope of immunity should be no broader than necessary to ensure effective governance." *Id.*

Because Jones claims damage to his reputation, and not physical injury, the first factor arguably balances in favor of conferring absolute immunity. *See Simpkins,* 720 A.2d at 898 ("to the extent Dr. Simpkins' injuries from the alleged defamation are economic, and not physical, the first factor 'arguably cut[s] against [Dr. Anderson's] liability.' "); *Kendrick,* 659 A.2d at 820 (the fact that plaintiff only claimed injury to reputation "cut[s] in favor of absolute immunity"); *but cf. Moss,* 580 A.2d at 1021 n. 19 ("we did not intend [in previous decision] to undervalue the strength of an individual's interest in reputational integrity"). The second factor is less clear. The parties agree that the Comprehensive Merit Personnel Act does not apply to Jones because he was an Excepted Service employee. *See Jones v. Williams,* 861 A.2d at 1269–70. Thus, he could not invoke a grievance procedure. *See* 6 DCMR § 1630.2 (2002) (grievance procedures do not apply to Excepted Service employees). Moreover, filing a grievance would not be appropriate because Jones is not complaining about the Mayor's decisions to suspend and, ultimately, to fire him. Agencies such as the Office of the Inspector General, or the Office of the United States Attorney, might decide to investigate the truth of the allegations about improper fund-raising,[9] and such an investigation perhaps would clear Jones's name, but those offices would not have authority to award damages.

However, the third and fourth *Moss* factors heavily balance in favor of shielding

---

9. Indeed, we are informed that the Office of the Inspector General investigated these fund-

raising activities.

the Mayor from the disruptive effects of litigation. Determining the truth of Jones's claims would require detailed examination of actions of the Mayor and his Executive Office spanning more than a year. This type of discovery would unduly invade the executive's functions. *See Kendrick*, 659 A.2d at 820 (it would invade executive function if courts were to decide whether statements of police officials about ongoing investigations were false and defamatory); *Liser v. Smith*, 254 F.Supp.2d 89, 101 (D.D.C.2003) (the second two *Moss* factors "require the Court to examine the government's interest in being exempted from the burdens of litigation"; "[w]ith respect to the third [*Moss*] factor, allowing courts to engage in post hoc evaluation of decisions made by law enforcement officers to release information about pending investigations would invite the kind of invasion of a core executive function that immunity is designed to block.").

As to the fourth *Moss* factor, society has a strong interest in protecting the ability and willingness of officials to keep the public informed about their own conduct and the conduct of persons under their supervision. Openness and candor promote the democratic process, make government more accountable, and may deter or expose corruption. *See Kendrick*, 659 A.2d at 820 ("The public interest requires that police officials be free to comment about ongoing police activity on matters of public concern."); *Glass v. Ickes*, 73 App. D.C. at 8 n. 9, 117 F.2d at 278 n. 9 ("The practice of cabinet officers to issue public statements in respect to the activity of their departments ... serve[s] a useful if not essential role in the functioning of the democratic processes of government.") (citing *United States v. Birdsall*, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930 (1914)). Based on the strength of the last two factors, it would appear that the Mayor is entitled to absolute immunity for making statements to the press about this topic.[10]

█ Whenever possible, the question of absolute immunity should be determined at the outset of the litigation. *See Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."); *Moss*, 580 A.2d at 1020 n. 18. We recognize, however, that sometimes discovery will be necessary. *See, e.g., Simpkins*, 720 A.2d at 899 n. 9, 900 (remanding for further proceedings after noting that the plaintiff had not had the benefit of discovery); *Moss*, 580 A.2d at 1021 (remanding after noting that the existing record did not enable us to weigh the pertinent factors). In this case we know the essential facts from the face of the complaint and the nature of the Mayor's office. The pivotal question is whether we should defer a decision until we learn more about the motives which prompted these statements.

█ We conclude that the answer is "no." When determining whether an act qualifies for absolute immunity, the court does not inquire into an official's motives. *See Barr v. Matteo*, 360 U.S. at 575, 79 S.Ct. 1335 ("The claim of an unworthy purpose does not destroy the privilege."); *Spalding v. Vilas*, 161 U.S. 483, 489, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1896) (plaintiff claimed injury to his good name and rep-

---

**10.** Jones takes a much different view of the fourth factor, arguing that "[t]here is simply no importance in protecting acts of out and out lying by the Chief Executive for his own political gain." If we were to adopt this rhetorical flourish as a principle of law, the defense of absolute immunity likely never could be applied until the finder of fact had determined the truth of the statements at issue and the motives that prompted them.

utation; "In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages."); *Glass v. Ickes*, 73 App. D.C. at 6, 117 F.2d at 276 (when absolute immunity applies, "allegations of 'malice' or improper motive in a complaint are of no significance"); *id.* at 11, 117 F.2d at 281 (holding that because the official's actions were within the scope of his duties (and so qualified for absolute immunity under federal law), his motives for issuing the press release were "wholly immaterial"); *cf. Finkelstein, supra* note 1, 774 A.2d at 340 (doctrine of absolute immunity for statements in judicial proceedings; "parties [will not be subjected] to the burden of defending their motives in subsequent slander litigation, or to the risk that juries may misapprehend those motives" (citation omitted)). Permitting inquiry into the official's motives would defeat the very purpose of absolute immunity. A determined litigant could always assert an improper motive, and the official would be required to shoulder the burden of responding to discovery, and perhaps enduring a trial, to explore those motives.[11]

■ Seeking to avoid these conclusions, Jones portrays this as "a case about an elected politician ... who purposefully sought to diffuse [sic] a politically sensitive issue that could have negatively impacted upon his re-election bid...." In this context, however, it may not be possible to draw a bright line between the interests of Anthony Williams, the incumbent, and those of Anthony Williams, the candidate for re-election. Nor are we prepared to distinguish between elected and appointed officials. It could always be alleged that an appointed official acted as she did to preserve or enhance her chance for higher office (either appointive or elective) in the future. Political ambition is merely one type of motive, and we have already established that motive is irrelevant to deciding whether an official is entitled to absolute immunity. Faithful adherence to the standards adopted in *Moss* will give sufficient assurance that the powers of office are not being abused.

■ The purpose of conferring absolute immunity is to protect officials not only from ultimate liability but also from all the time-consuming, distracting, and unpleasant aspects of a lawsuit, including discovery. *See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.*, 184 U.S.App. D.C. 397, 400, 566 F.2d 289, 292 (1977) (en banc); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Durso v. Taylor*, 624 A.2d at 454. Because the motives prompting Mayor Williams' statements are immaterial, no more discovery is required. Jones's complaint alleges that all of the statements at issue were made to the press, and all related to Jones's conduct when he was Deputy Chief of Staff.

---

**11.** By contrast, an official's motives or "good faith" will often be central to the inquiry when he claims, at most, qualified immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct."). For an explanation of how qualified immunity differs from absolute immunity, and how analysis of official immunity differs depending on whether it arises in response to a claim of common law tort or a complaint that constitutional rights have been violated, *see Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.*, 184 U.S.App. D.C. 397, 400–02, 566 F.2d 289, 292–94 (1977) (en banc).

These facts are sufficient to determine that absolute immunity does apply.

We realize that applying absolute immunity may in some instances allow unscrupulous officials to cause personal injury that cannot be redressed, but this is a trade-off our legal system is willing to make in order to promote our mutual interest in effective government. *Barr* and its progeny are based on the premise "that it is better to leave unredressed some defamations by officers acting out of malice or excess zeal, than to subject the conscientious to the constant dread of retaliation." *Expeditions Unlimited,* 184 U.S.App. D.C. at 402, 566 F.2d at 294. *See Barr v. Matteo,* 360 U.S. at 572, 576, 79 S.Ct. 1335; *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (L.Hand, J.). However, we emphasize that our holding does *not* immunize every statement made by a public official regardless of the context. If the *Moss* standards are applied carefully, the benefits of conferring absolute immunity will outweigh the costs of unredressed injury to an individual.

### III. Conclusion

Mayor Williams is entitled to absolute immunity for making the statements at issue. The judgment of the Superior Court is hereby reversed, and this case is remanded with instructions to dismiss the complaint.

*So ordered.*